# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 5

*October Term, A.D. 2012*

*January 16, 2013*

| | |
|---|---|
| BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR,<br><br>Petitioner,<br><br>v.<br><br>THOMAS E. BARNES, WSB #5-2087,<br><br>Respondent. | D-12-0009 |

## ORDER OF DISBARMENT

[¶1]    **This matter** came before the Court upon a "Report & Recommendation for Order of Disbarment," filed herein December 3, 2012, by the Board of Professional Responsibility for the Wyoming State Bar.  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, the Affidavit of Costs and Expenses, and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court.  It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's "Report & Recommendation for Order of Disbarment," a copy of which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that, effective this date, the Respondent, Thomas E. Barnes, shall be, and hereby is, disbarred from the practice of law in this state; and it is further

[¶4]    **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Thomas E. Barnes, shall reimburse the Wyoming State Bar the amount of $501.65, representing the costs incurred in handling this matter, as well as pay

an administrative fee of $500.00. Mr. Barnes shall pay the total amount of $1,001.65 to the Clerk of the Board of Professional Responsibility on or before March 1, 2013; and it is further

[¶5] **ORDERED** that, in accord with the Board of Professional Responsibility's recommendation, Mr. Barnes may petition for reinstatement following dismissal of the pending criminal matter against him. However, in no event may Mr. Barnes petition for reinstatement less two years from the date of this Order of Disbarment; and it is further

[¶6] **ORDERED** that Respondent shall comply with Section 22 of the Disciplinary Code for the Wyoming State Bar. That Section governs the duties of disbarred and suspended attorneys; and it is further

[¶7] **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Disbarment, along with the incorporated Report & Recommendation for Order of Disbarment, shall be published in the Pacific Reporter; and it is further

[¶8] **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the Report & Recommendation for Order of Disbarment, as a matter coming regularly before this Court as a public record; and it is further

[¶9] **ORDERED** that the Clerk of this Court cause a copy of the Order of Disbarment to be served upon the Respondent, Thomas E. Barnes; and it is further

[¶10] **ORDERED** that the Clerk of this Court transmit a copy of this Order of Disbarment to members of the Board of Professional Responsibility, and the clerks of the appropriate courts of the State of Wyoming.

[¶11] **DATED** this 16th day of January, 2013.

BY THE COURT:*

/s/

**MARILYN S. KITE**
**Chief Justice**

*Justice Davis took no part in the consideration of this matter. Retired Justice Michael Golden participated by assignment.

D-12-0009

# BEFORE THE SUPREME COURT

## STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

DEC - 3 2012

CAROL THOMPSON, CLERK

by CHIEF DEPUTY

| | | |
|---|---|---|
| *In the matter of* | ) | |
| *THOMAS E. BARNES,* | ) | |
| *WSB # 5-2087,* | ) | WSB No. 2012-105 |
| | ) | |
| *Respondent.* | ) | |

## REPORT & RECOMMENDATION FOR ORDER OF DISBARMENT

THIS MATTER having come before the Board of Professional Responsibility for a sanction hearing on the 3rd day of December, 2012, and the Wyoming State Bar appearing by and through Mark Gifford, Bar Counsel; and Respondent appearing by telephone; and a quorum of the Board having heard the testimony of Respondent and his witness, James Phillips, and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows:

### FINDINGS OF FACT

1.      Pursuant to Section 11(e) of the Disciplinary Code, on October 15, 2012, a copy of the formal charge in this matter was sent to Respondent by certified mail addressed to 201 19th Street, Box 607, Evanston, WY 82931, which is Respondent's last known address as shown in the records of the Wyoming State Bar.

2.      The return receipt for the October 15, 2012, mailing indicates that Respondent received the formal charge on October 18, 2012.

3.      Respondent did not serve an answer to the formal charge as required by Section 22(f) of the Disciplinary Code. When more than twenty days had passed after service of the formal charge upon Respondent, Bar Counsel filed an application for entry of default on November 8, 2012.

1

4. On November 8, 2012, the clerk of the Board properly entered the default of Respondent for failure to answer the formal charge. As a result, the following allegations of the formal charge are deemed to have been conclusively established:

5. Respondent has been licensed to practice law in the State of Wyoming since 1982, and has practiced in Evanston and Kemmerer, Wyoming. At the time of the events which gave rise to the formal charge, Respondent was living in Evanston, Uinta County, Wyoming, but was employed as Lincoln County Deputy Attorney in Kemmerer, Wyoming.

6. During 2010, Respondent purchased a 2007 Harley Davidson Ultra Classic motorcycle (the "Ultra Classic") from a dealer in Idaho. Respondent represented to the Uinta County Treasurer that Respondent had paid $800.00 for the motorcycle when in fact he had paid $14,000.00. As a result of his misrepresentation, Respondent paid $40.00 in sales tax, instead of the $833.00 in taxes and fees he would have been assessed had he accurately disclosed the purchase price.

7. On the morning of February 1, 2011, Respondent went to the office of the Uinta County Treasurer in Evanston, Wyoming, for the purpose of renewing the registration on motorcycles he owned and to pay sales tax and obtain registration on a 2010 Harley Davidson motorcycle Respondent had recently purchased in Utah. Included in the sale documents Respondent gave to the Uinta County Treasurer was one contract that showed no trade-in for the recent purchase, and another that showed that Respondent had traded a 2007 Harley Davidson Soft Tail (the "Soft Tail") for the 2010 Harley Davidson Motorcycle, and had received a $16,000 credit for the trade-in. When one of the clerks in the Uinta County Treasurer's office noticed that Respondent had just renewed the registration for the Soft Tail only moments before, Respondent told her that Respondent owned two 2007 Harley Davidson motorcycles, a Soft Tail

2

and an Ultra Classic, and that Respondent had actually traded the Ultra Classic in on the 2010 Harley Davidson motorcycle he had recently purchased. Respondent took back the paperwork and advised personnel in the Uinta County Treasurer's office that he would contact the dealer from whom he had purchased the 2010 Harley Davidson to clear up the confusion.

8. Later in the day on February 1, 2011, Respondent brought sale documents for a 2010 Harley Davidson motorcycle to the office of the Lincoln County Treasurer for the purpose of paying license and sales taxes on the purchase of the motorcycle.

9. The documents Respondent submitted to the Lincoln County Treasurer showed a purchase price for the 2010 Harley Davidson motorcycle of $21,404.00, less a $16,000.00 credit for a trade in of a 2007 Harley Davidson Ultra Classic motorcycle, for a total taxable amount of $5,404.00. Respondent gave the Lincoln County Treasurer title documents for the Ultra Classic, the title for which had been issued to Respondent in July of 2010 by the Uinta County Clerk. The back of the title for the Ultra Classic showed that Respondent had sold the vehicle to Michael T. Boord, a Rock Springs resident, on July 3, 2010. Respondent had in fact sold the Ultra Classic to Mr. Boord in July 2010 for $14,000.00.

10. Relying upon the papers Respondent submitted, the Lincoln County Treasurer assessed sales taxes and other fees in the amount of $313.43, which Respondent paid.

11. Respondent falsified the sales document he submitted to the Lincoln County Treasurer. There was no trade-in of a 2007 Harley Davidson Ultra Classic motorcycle. Rather, Respondent made a $16,000.00 cash down payment, with no trade-in. If Respondent had accurately reported the terms of the sale to the Lincoln County Treasurer, Respondent would have been required to pay $1,240.86, instead of the $313.43 he paid.

3

12. Respondent's fraud was subsequently discovered. Respondent was charged in Lincoln County with two felony counts: (1) forgery, in violation of W.S § 6-3-602, and (2) possession of forged writings in violation of W.S § 6-3-603. Similar charges were filed in Uinta County, including a count of forgery for Respondent's misrepresentation regarding the purchase of the Ultra Classic in 2010. Respondent was immediately terminated from his position as Lincoln County Deputy Attorney.

13. Respondent hired Evanston attorney James E. Phillips to represent him on the criminal charges. Mr. Phillips and Cal Rerucha, the prosecutor on the case, negotiated a plea agreement pursuant to which Respondent would plead guilty to one count of felony forgery in the Lincoln County charges and the rest of the counts would be dismissed, that jail time would not be recommended, and that Respondent would be allowed to argue for first offender treatment under W.S. § 7-13-301. Pursuant to that plea agreement, Respondent appeared at an arraignment before District Judge Norman E. Young on March 22, 2012, and pleaded guilty to the crime of forgery.

14. On April 6, 2012, Judge Young entered an order accepting Respondent's plea and for a presentence investigation. In the presentence investigation report which followed, Probation and Parole recommended probation for Respondent, with the usual conditions.

15. On August 21, 2012, Judge Young entered an Order of Probation in Respondent's case. Judge Young ordered First Offender treatment for Respondent. On August 27, 2012, Respondent began a term of two years' unsupervised probation, following which, "if the Court is satisfied that rehabilitation has occurred and Defendant has fulfilled the terms of his probation, the Court will discharge Defendant and dismiss the proceedings against him."

4

16. Respondent's conduct as set forth above violated the following rules of the Wyoming Rules of Professional Conduct:

a. Rule 8.4(b), which provides, "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

b. Rule 8.4(c), which provides, "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

c. Rule 8.4(d), which provides, "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

17. Respondent engaged in serious criminal conduct, a necessary element of which includes false swearing, misrepresentation or fraud. Such conduct by Respondent seriously adversely reflects on Respondent's fitness to practice.

18. The Board finds certain aggravating factors as further set forth below.

## CONCLUSIONS OF LAW

19. The Wyoming Rules of Professional Conduct provide, "A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs."

20. The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

5

21. ABA **Standard 3.0** lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct:

> (a) the duty violated;
> (b) the lawyer's mental state;
> (c) the potential or actual injury caused by the lawyer's misconduct; and
> (d) the existence of aggravating or mitigating factors.

22. Respondent's misconduct falls within the heading "Violation of Duties Owed to the Public," more specifically, "Failure to Maintain Personal Integrity" (Standard 5.1):

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit or misrepresentation:
>
> 5.11 Disbarment is generally appropriate when:
> > (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of any other commit any of these offenses; or
> > (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
>
> 5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously reflects on the lawyer's fitness to practice.
>
> 5.13 Reprimand [in Wyoming, public censure] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.
>
> 5.14 Admonition is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

22. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any

6

level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

23.     ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1     *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2     *Aggravation*

9.21    *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22    *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

9.3     *Mitigation.*

9.31    *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32    *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;

7

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

    (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

    (2) the chemical dependency or mental disability caused the misconduct;

    (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

    (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4    *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

24.    In Respondent's case, the following aggravating factors are present: (a) dishonest or selfish motive; (b) a pattern of misconduct; (c) multiple offenses; (d) substantial experience in the practice of law; and (e) illegal conduct.

25. The following mitigating factors are present: (a) absence of a prior disciplinary record; (b) timely good faith effort to make restitution or rectify consequences of misconduct; (c) imposition of other penalties or sanctions; and (d) remorse.

26. Section 24(c) of the Disciplinary Code for the Wyoming State Bar provides, "An attorney who has been disbarred may not petition for reinstatement for at least five (5) years from the effective date of the disbarment unless another period is specified in the order."

RECOMMENDATION

WHEREFORE, the Board of Professional Responsibility recommends that the Wyoming Supreme Court:

1. Issue an Order disbarring Respondent;

2. Order Respondent to reimburse the Wyoming State Bar for all costs and expenses of prosecuting this matter and for the disciplinary proceeding;

3. In consideration of all aggravating and mitigating factors in this case, and in particular Respondent's sincere expression of remorse for his conduct and the severe consequences he has suffered, the Board recommends the Order provide that Respondent may petition for reinstatement following the dismissal of the pending criminal matter, but in no event less than two years from the date of the Order of Disbarment.

DATED this 3rd day of December, 2012.

Jenifer E. Scoggin
Chair, Board of Professional Responsibility

9

# CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing was served upon Respondent this 3rd day of December, 2012, by United States mail, first class postage prepaid and correctly addressed as follows:

Thomas E. Barnes
201 19th Street, Box 607
Evanston, WY 82931